UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| WILLIE MORRIS CLAY,<br><br>           Plaintiff,<br><br>   v.<br><br>DAVID LIVINGSTON, et. al.,<br><br>           Defendants. | No. C 13-3437 NJV (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>(Doc. 50.) |

This is a civil rights case brought pro se by a state prisoner at Pelican Bay State Prison. Plaintiff alleges that while at Martinez Detention Facility, he and other Muslims who were fasting during Ramadan did not receive their lunches, even though completely sacrificing meals is not appropriate. He did not receive lunch for nine days. He contends that the withholding of his lunch is a free exercise violation of the First Amendment and seeks monetary and injunctive relief. Defendants filed a motion for summary judgment and plaintiff filed an opposition. For the reasons set forth below, defendants' motion for summary judgment is granted.

**DISCUSSION**

**Motion for Summary Judgment**

    **A.**    **Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

**First Amendment Free Exercise**

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id.* at 884-85. Rather, the sincerity test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. *Id.* (finding district court impermissibly focused on whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884).

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see, e.g., Walker v. Beard*, No. 12-17460, slip op. at 20-21 (9th Cir. June 18, 2015) (prison's

classification of a white racist inmate as eligible to be housed with a person of a different race and its refusal to grant him an exemption did not violate Aryan Christian Odinist inmate's religious rights under the Free Exercise Clause because prison's policy was reasonably related to the penological interest in avoiding the legal liability of equal protection suits brought by other inmates).  *Shakur*, 514 F.3d at 887-88 (remanding First Amendment claim regarding alternative kosher diet requested by prisoner for district court to make sufficient findings pursuant to *Turner* as to impact of the accommodation on the prison and the availability of ready alternatives).

*Turner* sets forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates";
>
> (3) Whether "accommodation of the asserted constitutional right" will impact "guards and other inmates, and the allocation of prison resources generally"; and
>
> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

*Turner*, 482 U.S. at 89–90.

**B.    Facts**

The following facts are undisputed, unless otherwise noted.

Plaintiff was incarcerated at Martinez Detention Facility ("MDF") from April 28, 2009, to September 13, 2013.  Defendants' Motion for Summary Judgment ("MSJ") at 3.  Plaintiff was transferred to state prison from MDF in September 2013.  *Id.*

Ramadan is an Islamic holiday that lasts for 30 days and involves fasting.  *Id.* at 4.  MDF allows inmates to be placed on a daytime fasting menu during Ramadan.  *Id.*  These inmates receive their breakfast meals prior to sunrise, do not receive a lunch meal, and receive dinner after sunset.  *Id.*

On July 6, 2013, plaintiff submitted a request form to participate in the Ramadan

3

meal program. MSJ, Vannoy Decl., Ex. B at 1. Plaintiff stated, "Ramadan is slated for the 8th of July and the Muslim community is requesting the opportunity to participate in the Holy month by fasting and accommodated by receiving the breakfast before 4:30 am and allowed to have dinner prepared after sunset, as to meet the obligatory time frame for fasting." *Id.* There was no reference to any lunch meal. *Id.* Plaintiff was placed on the Ramadan meal program.

On July 10, 2013, plaintiff submitted a grievance form to defendant correctional officer Zamora regarding missing lunch while on the Ramadan meal program. MSJ, Vannoy Decl., Ex. B at 2. Plaintiff stated, "there seems to be a misunderstanding in regards to the purpose and provisions in reference to sacrifice, meals and fasting. There are many obligatory provisions for the Holy month of Ramadan, nevertheless sacrificing your meals is not one of them. Ramadan consists of the daily Fast that is enjoined from dawn until sunset, during this month. Therefore any policy, rule or regulation that deprives any Ramadan participant of any meal is arbitrary and in violation of the United States Constitution...." *Id.* Zamora responded, "we are going w/ the information the Chaplain gave us. Please refer this to him." *Id.*

On July 11, 2013, plaintiff submitted a grievance to the chaplain noting that Muslims were not receiving lunches while fasting during Ramadan and they should not be sacrificing this meal. MSJ, Vannoy Decl., Ex. B at 5-8. Plaintiff received a response from the chaplain noting that no noon meals are served for Ramadan. MSJ, Vannoy Decl., Ex. B at 8.

On July 12, 2013, plaintiff submitted a grievance that repeated the allegations of his July 10, 2013, grievance. MSJ, Vannoy Decl., Ex. B at 9-11. On July 16, 2013, defendant correctional officer Baldwin stated that plaintiff would be offered lunch and may choose to accept or deny it. *Id.* at 9. On July 18, 2013, plaintiff's lunch service resumed. MSJ at 5. During the nine days that plaintiff was not provided lunch, he ate already purchased food that was in his cell which included chicken breasts, refried beans, Spanish rice, and tortilla chips. Opposition, Decl. at 2.

4

Defendants assert that Ramadan involves fasting during daylight hours, with an exception for pregnant women, women who are nursing, the sick, and travelers. MSJ at 4. Plaintiff disputes this and contends that fasting through lunch is not part of Ramadan. Opposition at 3. Plaintiff states that the Imam who works with the jail, Dr. Amer Salih Araim had previously intervened when Muslim inmates were denied lunch during Ramadan. *Id.* at 2-3. Defendants submit that in his book *Understanding Islam: Fifty Questions*, Dr. Amer Salih Araim, the same Iman who plaintiff discusses and who works with the jail, stated that during Ramadan, Muslims abstain from eating and drinking from dawn to sunset. MSJ, Whitman Decl., Ex. A.

### C. Analysis

Defendants state that they do not dispute the sincerity of plaintiff's belief in Islam; rather, defendants assert that plaintiff's belief that fasting during daylight hours requires lunch meals does not satisfy the sincerity test as rooted in religious belief. In addition to the writings of the Imam at MDF that all adults must fast during daylight hours, defendants note that many federal courts have addressed the observance of Ramadan by prisoners. *See e.g. O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987) ("During Ramadan, Muslim prisoners are awakened at 4 a.m. for an early breakfast, and receive dinner at 8:30 each evening."); *Washington v. Garcia*, 977 F. Supp. 1067, 1072 (S.D. Cal. 1997) ("Here, the current Muslim Imam at [the prison] confirms the essence of the Islamic practice is fasting and prayer during daylight hours of Ramadan. Fasting is one of the essential aspects of practicing Islam, but eating a special daily meal is not.") (citation omitted); *Washington v. Fannon*, 2007 WL 1725653, at *13 (E.D. Cal. June 13, 2007) ("It is also undisputed that Muslims must abstain from all food and drink during the daylight hours for the entire month of Ramadan."); *Tyson v. Ratelle*, 166 F.R.D. 442, 449 (C.D. Cal. 1996) ("Both parties agree that a central tenet of the Islamic religion is the observance of the holy month of Ramadan, which requires adherents to fast.")

Despite the arguments and law that support the contention that Ramadan consists of

5

fasting during daylight hours, which includes not eating lunch during the day, for purposes of this motion for summary judgment the Court will assume that eating lunch during Ramadan is plaintiff's sincerely held religious belief.

Regardless, reviewing the factors set forth in *Turner*, defendants are entitled to summary judgment. With respect to the first factor, there are legitimate interests in MDF's regulation that allow a specific Ramadan meal schedule. Serving breakfast before dawn, not serving lunch, and serving dinner after sunset are valid rational regulations to comply with the daytime fasting rituals of Ramadan. This program was approved by the chaplain and is consistent with the writings of the Imam who works with the jail. Moreover, serving lunch to inmates who are known to be observing Ramdan could be considered improper and burden the religious practices of Muslims who do not want lunch during daytime fasting.

For the second factor, plaintiff had other means of practicing his faith despite the withholding of lunch meals for nine days. Plaintiff was permitted to pray and keep a copy of the Koran in his cell, he had use of a towel as a prayer rug in his cell, and he could meet with an Imam[1] and attend weekly prayer groups. During the nine days that MDF did not serve him lunch, plaintiff had food in his cell that he was able to eat during daylight hours and he could purchase food at the commissary.

Looking to the third factor, plaintiff's requested accommodation would cause negative impacts on correctional officers, prison resources, and other inmates. Plaintiff first requested the Ramadan meal program and this was provided to him. When he later requested lunch, he was informed that lunch was not included in the Ramadan meal program. When he then requested the Ramadan meal program and lunch, both were provided to him. While it took several days of submitting requests and receiving replies, plaintiff was provided with the specific meal plan he requested. The correctional officers providing the meals noted that plaintiff needed to contact the chaplain to seek guidance on

---

[1] Plaintiff states that the Imam was out of town during Ramadan.

6

the proper religious accommodations. To the extent plaintiff seeks to decide on each given day what his meal program should require, that would be untenable for correctional staff who would have to make on the spot determinations for individual inmates. *See Sefeldeen v. Alameida*, 238 Fed. App'x 204, 207 (9th Cir. 2007) (finding that the existing prison meal program "avoided the budgetary disruption inherent to completely individualizing religious menus"). To the extent that plaintiff seeks to change the entire Ramadan meal program at MDF to require the jail to provide lunch for every Muslim prisoner, such a change would fail to accommodate other Muslim prisoners who do not want lunch during the daily fasting period.

Finally, with respect to the fourth factor, there is not a ready alternative. Plaintiff obtained the Ramadan menu he requested along with a daily lunch, after his grievance was reviewed by the chaplain and once plaintiff made clear what he was requesting. As noted above, providing each inmate with a specific individualized meal plan that can constantly change is not an easy alternative compared to the established meals plans that the jail offers. Thus, looking at all the *Turner* factors, defendants' conduct was reasonably related to legitimate penological objectives and did not violate the Free Exercise Clause.[2]

Furthermore, it is undisputed that plaintiff was provided breakfast prior to sunset and dinner after sunset for the entire 30 days of Ramadan.[3] Plaintiff was only denied lunch for nine days, during which he ate food that he had stored in his cell. Brief, sporadic

---

[2] In his opposition to summary judgment plaintiff argues, for the first time, that his lunch meal should have been prepared and served after dinner. Plaintiff did not present this argument in any of his complaints in this case nor was it part of the grievances to jail staff. Therefore, this allegation was not exhausted, not presented to the Court, and is not part of this action. *See Resnick v. Adams*, 348 F.3d 763, 769-71 (9th Cir. 2003) (holding that First Amendment is not violated when the prisoner fails to give notice of his specific religious diet preference).

[3] In addition to the lack of a constitutional violation, plaintiff's request for injunctive relief is moot. When plaintiff filed this action he was still at MDF and it was possible that while the period of Ramadan had passed, he would be observing Ramadan again at that facility, therefore the case was perhaps capable of repetition yet evading review. However, plaintiff has since been sentenced to 25 years to life in state prison and is currently incarcerated at Pelican Bay. There is not a reasonable expectation that plaintiff will be back at MDF in the future.

7

food-delivery problems are insufficient to establish a substantial burden on plaintiff's free exercise of religion. *See Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) ("relatively short-term and sporadic" intrusions did not constitute substantial interference with prisoner's free exercise of religion) (internal quotation marks omitted)); *Taylor v. Pelican Bay*, 2010 WL 2671989, at *8 (N.D. Cal. July 2, 2010) (holding that the failure to provide twenty-five religious diet meals to an inmate over a twenty-two-month period was insufficient to establish a substantial burden on the Free Exercise right); *Thompson v. Boldt*, 2015 WL 263478, at *11 (C.D. Cal. Jan. 21, 2015) (holding that "brief, sporadic food-delivery problems are insufficient to establish a substantial burden on Plaintiff's free exercise of religion"); s*ee also Davitashvili v. Schomig*, 2012 WL 12767, at *12-13 (D. Ariz. Jan. 4 2012) (plaintiff's receipt of nonkosher meals "on some occasions" did not violate First Amendment or RLUIPA because "no evidence . . . show[ed] that these instances were anything more than periodic service-delivery related problems").

It is undisputed that plaintiff first requested the Ramadan meal plan, which does not provide for lunch, and he was placed on that meal plan. Plaintiff's later requests for lunch were confusing because he did not make clear that he wanted to stay on the Ramadan meal plan. He stated that sacrificing meals is not part of Ramadan but he did not specify that he wanted defendants to provide lunch as opposed to other relief. When it became clear that he desired the Ramadan meal plan and lunch, both were provided to him for the remaining 21 days of Ramadan. This brief nine-day period when he was not served lunch does not demonstrate a constitutional violation.[4]

**Qualified Immunity**

---

[4] To the extent plaintiff seeks relief under Religious Land Use and Institutionalized Persons Act (RLUIPA), he is similarly not entitled to relief. Plaintiff's claims for injunctive relief are moot and a claim under RLUIPA may proceed only for injunctive relief against defendants acting within their official capacities. *Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (RLUIPA does not contemplate liability of government employees in individual capacity); *Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012) (money damages not available for RLUIPA claim against defendants sued in their official capacity).

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Id*. at 205.  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *Pearson*, 555 U.S. at 236.

As discussed above, the Court finds that plaintiff was not deprived of an actual constitutional right.  Even assuming that there was a deprivation of a constitutional right, it would not have been clear to a reasonable person that his or her conduct was unlawful in this situation.  It is undisputed that plaintiff requested the Ramadan meal program and was placed on that program.  It is undisputed that at the time he made that request, plaintiff did not request lunch.  The Ramadan meal program does not include lunch because observing Ramadan involves daylight fasting.  When plaintiff subsequently submitted grievances regarding the meal program, it was not clear what relief he sought.  Once plaintiff clearly specified that he wanted lunch while he was on the Ramadan meal plan, defendants provided him with lunch.  Although the entire process to determine what plaintiff was requesting took time and plaintiff was not served lunch for nine days, it was not clear to any

of the defendants that their actions were unlawful. Based on all of these reasons-plaintiff's confusing requests, the fact that the established Ramadan meal plan that plaintiff requested did not include lunch, and that plaintiff was provided lunch once defendants understood his request-defendants are entitled to qualified immunity.

## CONCLUSION

1. Defendants' motion for summary judgment (Docket No. 50) is **GRANTED**.

2. Plaintiff's *Rand* notice motion (Docket No. 70) is **DENIED**.

3. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 31, 2015.

NANDOR J. VADAS
United States Magistrate Judge